UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

VESUVIUS TECHNOLOGIES, LLC,

        Plaintiff,

        v.                              Case No. 12-CV-1161

SERVERCENTRAL, INC.,

        Defendant.

## ORDER DENYING MOTION TO DISMISS OR TO TRANSFER

### I. FACTS AND PROCEDURAL HISTORY

Vesuvius Technologies, LLC ("Vesuvius") is organized in Florida but its principal place of business is in Milwaukee, Wisconsin. (Docket No. 1, ¶1.) Its members are two trusts organized under Wisconsin law. The trustee of these member trusts is a citizen of Wisconsin. (Docket No. 1, ¶2.) ServerCentral, Inc. ("ServerCentral") is an Illinois corporation with its principal place of business in Chicago, Illinois. (Docket No. 1, ¶3.) The parties entered into a contract whereby ServerCentral agreed to provide Vesuvius with "colocation services, bandwidth/internet connection, and power." (Docket No. 1, ¶13.) To enable this service, Vesuvius installed its own equipment at ServerCentral's facility in Elk Grove, Illinois. (Docket No. 1, ¶13.) Vesuvius subsequently sought to remove its equipment but was prevented from doing so by ServerCentral, (Docket No. 1, ¶¶17-21), leading to Vesuvius filing this action on November 14, 2012, (Docket No. 1). The court has subject matter jurisdiction based upon the diversity of the parties and because the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a). However, ServerCentral contends that the court lacks personal jurisdiction over it.

In response to the complaint, ServerCentral filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) for lack of personal jurisdiction or in the alternative to transfer this action to the Northern District of Illinois. (Docket No. 13.) The court permitted Vesuvius to undertake limited discovery related to the motion to dismiss, (Docket No. 25), and following that discovery, the parties filed supplemental briefs with the court, (Docket Nos. 32 (sealed pursuant to protective order); 34). The pleadings on ServerCentral's motion are now closed and the matter is ready for resolution. All parties previously consented to the full jurisdiction of a magistrate judge. (Docket Nos. 10, 12.)

## II. PERSONAL JURISDICTION

Venue is proper in "a judicial district in which any defendant resides…." 28 U.S.C. § 1391. For purposes of venue, a corporate defendant, such as ServerCentral, shall be deemed to reside in any judicial district where it "is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Thus, the court looks to Wisconsin's long-arm statute, Wis. Stat. § 801.05, to determine whether a corporate defendant is subject to personal jurisdiction. A corporation is subject to general personal jurisdiction under Wisconsin's law, Wis. Stat. § 801.05, if it "[i]s engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise." Wis. Stat. § 801.05(1)(d). Alternatively, a defendant is subject to specific personal jurisdiction in Wisconsin if, as is relevant here: "In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury…[s]olicitation or service activities were carried on within this state by or on behalf of the defendant." Wis. Stat. § 801.05(4)(a). Wisconsin's long-arm statute is liberally construed in favor of jurisdiction." Kopke v. A. Hartrodt S.R.L., 2001 WI 99, ¶10, 245 Wis. 2d 396, 629 N.W.2d 662.

Generally, a court's analysis of personal jurisdiction is two-fold. Rasmussen v. Gen. Motors Corp., 2011 WI 52, ¶16, 335 Wis. 2d 1, 803 N.W.2d 623. First, the court must determine whether the defendant comes within the state's long-arm statute. Id. Second, the court must determine whether exercising jurisdiction over the defendant would comport with due process. Id. Wisconsin continues to follow this two-step analysis despite the fact that, at least with respect to claims of jurisdiction under Wis. Stat. § 801.05(1)(d), the analyses overlap. Id. at ¶¶19-21. Parenthetically, Chief Justice Abrahamson noted the apparent redundancy of the analyses and stated in concurrence that, with respect to claims of jurisdiction under Wis. Stat. § 801.05(1)(d), "the only analysis that need be done is a due process analysis." Id. at ¶57 (Abrahamson, C.J., concurring).

However, a majority of the Wisconsin Supreme Court has not adopted this single-pronged approach, merging due process with statutory factors. Thus, this court's analysis must remain distinctly two-pronged because federal courts defer to state courts only on matters of state law and not federal due process protections. RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1275-76 (7th Cir. 1997). Thus, this court shall first look to Wisconsin case law (or federal cases applying Wisconsin law) to determine whether the defendant falls within either Wis. Stat. § 801.05(1)(d) or § 801.05(4)(a). Id. If the court answers this first question affirmatively, it shall then look to federal case law for guidance as to whether the statutory exercise of jurisdiction comports with due process. Id.

### A. Wis. Stat. § 801.05(1)(d)

"Pursuant to Wis. Stat. § 801.05(1), Wisconsin courts may exercise general personal jurisdiction over a defendant when that defendant takes up 'local presence or status' within the state." Rasmussen, 2011 WI 52, ¶18 (quoting Druschel v. Cloeren, 2006 WI App 190, ¶¶7–8, 295 Wis.2d 858, 723 N.W.2d 430). In determining whether a defendant engaged in the statutorily required "substantial and not isolated activities" in Wisconsin, the court considers "[(1)] the

3

quantity of the contacts, [(2)] the nature and quality of those contacts, [(3)] the source and connection of the contacts to the claim made, [(4)] the interest of Wisconsin in the action and [(5)] the convenience of the parties. Id. at ¶19 (citing Nagel v. Crain Cutter Co., 50 Wis.2d 638, 648, 184 N.W.2d 876 (1971)).

While "Wisconsin's long-arm statute is liberally construed in favor of jurisdiction," Kopke, 2001 WI 99, ¶10, the defendant's substantial activities in Wisconsin must nonetheless be "continuous and systematic," Travelers Ins. Co. v. George McArthur & Sons, 25 Wis. 2d 197, 203, 130 N.W.2d 852, 854 (1964). "A defendant generally has 'substantial and not isolated' contacts with the state if it "solicits, creates, nurtures, or maintains, whether through personal contacts or long-distance communications, a continuing business relationship with anyone in the state." Shepherd Investments Int'l, Ltd. v. Verizon Commc'ns Inc., 373 F. Supp. 2d 853, 861 (E.D. Wis. 2005) (quoting Stauffacher v. Bennett, 969 F.2d 455, 457 (7th Cir.1992)) (brackets omitted).

In assessing the defendant's contacts with the state, the court focuses upon the contacts that existed at the time the action was commenced, Wis. Stat. § 801.05(1); FL Hunts, LLC v. Wheeler, 2010 WI App 10, ¶11 322 Wis. 2d 738, 747, 780 N.W.2d 529, 533, although the defendant's recent activities in the state will carry some weight, Shepherd, 373 F. Supp. 2d at 865 (citing Miller Brewing Co. v. ACME Process Equip. Co., 441 F. Supp. 520, 524 (E.D.Wis.1977)).

"The plaintiff has a "minimal burden" of showing that the statutory and constitutional requirements are met." Rasmussen, 2011 WI 52, ¶17 (citing Kopke, 2001 WI 99, ¶8). The court "may consider documentary evidence and weigh affidavits in reaching a determination as to whether this burden has been met. Factual doubts are to be resolved in favor of the plaintiff." Id. (quoting Kopke, 2001 WI 99, ¶8). If the court concludes that the plaintiff has sustained its burden to show that Wisconsin's long-arm statute reaches the defendant, the burden then shifts to the defendant to rebut the presumption that the exercise of jurisdiction would comport with due process.

4

Shepherd, 373 F. Supp. 2d at 861 (citing Kopke, 2001 WI 99, ¶22); see also Harley-Davidson Motor Co., Inc. v. Strada, 78 F.R.D. 521, 523 (E.D. Wis. 1978).

Vesuvius contends that ServerCentral is subject to the jurisdiction of Wisconsin courts because it was "engaged in substantial and not isolated activities" in Wisconsin by soliciting customers in Wisconsin through internet advertising that it knew would be viewed by persons in Wisconsin and by collecting significant revenue from a few different customers in Wisconsin over recent years. However, ServerCentral notes that it was never physically present in Wisconsin, nor did it ever ship any product to Wisconsin. Rather, it merely provided services from Illinois to its customers, some of whom happened to be in Wisconsin. While ServerCentral representatives communicated with Vesuvius' employees in Wisconsin via email or telephone, the only physical interaction between the parties, minimal that it was, occurred in Illinois. To the extent that any physical product was involved, e.g. the servers the plaintiff provided to the defendant, all relevant events occurred in Illinois.

The court begins its analysis with the first two Nagel factors—the quantity and quality of ServerCentral's contacts with the state of Wisconsin. ServerCentral had other customers to whom it mailed invoices at Wisconsin addresses from 2009 to 2012. No employee, agent, or representative of ServerCentral ever visited Wisconsin during this time for the purpose of sales or advertising. It provided these customers services from its facilities outside of Wisconsin.

However, a defendant need not physically set foot in Wisconsin to be subject to its jurisdiction. Stauffacher, 969 F.2d at 457-58; see also Dorf v. Ron March Co., 99 F. Supp. 2d 994, 997 (E.D. Wis. 2000); PKWare, Inc. v. Meade, 79 F.Supp.2d 1007 (E.D.Wis. 2000). It is possible for a defendant to establish high quality contacts with the state through only telephonic or email communications. PKWare, 79 F. Supp. 2d at 1013; but see Dietrich v. Wisconsin Patients Compensation Fund, 169 Wis. 2d 471, 480, 485 N.W.2d 614, 618 (Ct. App. 1992) ("[T]elephone

5

calls received by a defendant do not, standing alone, constitute contact with Wisconsin sufficient to establish a basis for personal jurisdiction."). "A defendant who maintains a continuing business relationship with a Wisconsin resident whether through personal contacts or long distance communications generally has 'substantial and not isolated' contacts with the state." Dorf, 99 F. Supp. 2d at 997 (citing Stauffacher, 969 F.2d at 457; PKWare, 79 F.Supp.2d at 1013).

Here, Vesuvius alleges that over its 33 month relationship with ServerCentral, it initiated 120 service orders and had "hundreds of emails and telephone calls between employees of the companies to carry out these work orders and make sure the services provided by ServerCentral were running smoothly." (Docket No. 18 at 9.) While the declaration Vesuvius cites in support of this statement refers to more than 120 service orders, (Docket No. 19, ¶9), with respect to the quantity of emails or telephone calls, it states variously only that there were "numerous" or "many" or "some," (Docket No. 19, ¶¶6-7, 11). Nonetheless, it is clear that ServerCentral maintained a lengthy and relatively extensive relationship with Vesuvius, and ServerCentral does not dispute the contention that its contacts with Vesuvius were in the hundreds. And while the relationship lacked the highest quality contact of personal meetings in Wisconsin, it was nonetheless comprised of persistent contacts of the second highest degree, i.e. some other form of personal contact such as phone calls or emails, see Dorf, 99 F. Supp. 2d at 997.

The third Nagel factor weighs in favor of finding jurisdiction. "[P]laintiff's lawsuit arises directly from defendant's Wisconsin contacts made in creating and nurturing the agreement which defendant is alleged to have breached." Dorf, 99 F. Supp. 2d at 998. Aside from the indication that the defendant had other customers in Wisconsin during the years of its relationship with Vesuvius, the only information that the court has on the defendant's contacts with Wisconsin is information regarding its emails and phone calls with Vesuvius. Thus, essentially all of the information the court has about ServerCentral's contacts with Wisconsin relate to this action.

The final two Nagel factors "are less important," Dorf, 99 F. Supp. 2d at 998, and come out as essentially neutral in this case. Wisconsin's interest in this case is limited to the general interest that any state has in ensuring that its residents are afforded redress for a wrong. See Logan Prods., Inc. v. Optibase, Inc., 103 F.3d 49, 54 (7th Cir. 1996). As for the convenience of the parties, the alternative to litigating in the Milwaukee Division of the Eastern District of Wisconsin is the Chicago Division of the Northern District of Illinois, a distance of roughly 100 miles. As the court discusses below with respect to the defendant's motion to transfer pursuant to 28 U.S.C. § 1404, this factor does not favor the defendant. While each party would likely prefer whichever forum is closest to it, neither Milwaukee nor Chicago is a particularly more convenient forum for this litigation.

Having considered these factors in light of the applicable law, the court must conclude that Vesuvius has adequately established that ServerCentral was engaged in substantial and not isolated activities in Wisconsin. A 33 month relationship with a customer involving hundreds of personal contacts is certainly not insubstantial or isolated. Before the court considers the second step of the analysis, i.e. due process, it will briefly discuss the plaintiff's alternate argument regarding personal jurisdiction.

**B. Wis. Stat. § 801.05(4)(a)**

Wis. Stat. § 801.05(4) applies to tortious injuries, Kinetic Co. v. BDO EOS Svetovanje, 361 F. Supp. 2d 878, 883 (E.D. Wis. 2005) (citing Nagel, 50 Wis. 2d at 642, 184 N.W.2d at 878), and states:

> In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, either:
> (a) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or
> (b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade.

7

The plaintiff alternatively alleges that the defendant is subject to specific jurisdiction under Wis. Stat. § 801.05(4)(a) because, although the relevant injurious acts occurred in Illinois, the plaintiff was injured in this state, and at the time of the injury, the defendant carried on solicitations within Wisconsin. The defendant initially argued that Wis. Stat. § 801.05(4)(a) did not apply because the defendant "does not conduct advertising or marketing efforts specifically directed to customers in Wisconsin," (Docket No. 21 at 6 (quoting Docket No. 15, ¶6)), nor are its internet advertisements specifically directed toward any geographic region, (Docket No. 21 at 6-7 (quoting Docket No. 22, ¶5-6)). However, the statute does not require that solicitations be "specifically directed" to Wisconsin, only that the solicitations were "carried on" within Wisconsin. Wis. Stat. § 801.05(4)(a). Whether actions are "specifically directed" at Wisconsin is relevant to the due process analysis with respect to tortious conduct, but such an analysis is not necessarily limited to only ServerCentral's advertising, for its advertising was not the source of the plaintiff's injury.

Following jurisdictional discovery, ServerCentral's only effort to challenge Vesuvius' assertion that Wis. Stat. § 801.05(4)(a) applies is found in a footnote where it states: "ServerCentral disputes that it engages in solicitation and service activities in Wisconsin. The fact that ServerCentral does not specifically exclude Wisconsin from its Google AdWords marketing does not support Plaintiff's conclusion that ServerCentral targets the State of Wisconsin." (Docket No. 34 at 8 n.3.) Use of a footnote as the sole means of making an argument is not persuasive to this court. In any event, the footnote contains merely an empty assertion. It is meaningless for a party to assert that it disputes something without offering something to substantiate the assertion.

Here, the facts remain undisputed that ServerCentral undertook advertising that was viewed in Wisconsin and it did not take the steps it could have undertaken to exclude Wisconsin users from being exposed to its internet advertisements. Therefore, the court regards the defendant as having, in effect, abandoned its argument that it does not come within Wis. Stat. § 801.05(4)(a). Accordingly,

the court shall only consider ServerCentral's contention that exercising jurisdiction over it under this statute would not comport with due process. (Docket No. 34 at 8-12.) Alternatively, even if the court did not find that the defendant has conceded this point, the court would nonetheless find that the plaintiff has sustained its burden to show that the defendant falls within Wis. Stat. § 801.05(4)(a).

### C. Due Process

The court now proceeds to the second step of its analysis. Due process requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." uBID, Inc. v. GoDaddy Grp., Inc., 623 F.3d 421, 425 (7th Cir. 2010) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). The defendant "must have established these contacts by purposefully availing itself of the privilege of doing business in Wisconsin." Logan Prods., Inc. v. Optibase, Inc., 103 F.3d 49, 52 (7th Cir. 1996) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). "The due process clause will not permit jurisdiction to be based on contacts with the forum that are random, fortuitous, or attenuated." uBid, 623 F.3d at 426 (citing Burger King Corp., 471 U.S. at 475). Although other circuits have crafted jurisdictional tests to specifically address the questions created when contacts occur via the internet, the Court of Appeals for the Seventh Circuit has declined to do so. Illinois v. Hemi Grp. LLC, 622 F.3d 754, 759 (7th Cir. 2010) ("[W]e think that the traditional due process inquiry described earlier is not so difficult to apply to cases involving Internet contacts that courts need some sort of easier-to-apply categorical test.") (citing Jennings v. AC Hydraulic A/S, 383 F.3d 546, 550 (7th Cir. 2004)); see also Tamburo v. Dworkin, 601 F.3d 693, 703 n.7 (7th Cir. 2010).

"Personal jurisdiction can be either general or specific, depending on the extent of the defendant's contacts with the forum state." uBid, 623 F.3d at 425. "A defendant is subject to

9

general jurisdiction when it has continuous and systematic general business contacts with the forum state. Id. at 425-26 (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415–16 (1984)) (internal quotation marks omitted). The bar for plaintiffs with respect to general personal jurisdiction is high, but this is because the consequences for defendants are severe. Id. at 426. A defendant found to be subject to general personal jurisdiction may be sued in the forum state for essentially any claim. Id. But to clear this bar, a plaintiff is able to rely upon not only the defendant's connections with a state vis-à-vis the plaintiff or the plaintiff's claim but essentially any connection the defendant may have with the forum state. Id. Specific jurisdiction, on the other hand, is much more limited in that in that there must be a direct relationship between the defendant's constitutionally sufficient contacts and the plaintiff's claim. Id. at 425.

All of the plaintiff's assertions with respect to the defendant's connections with the state are of the same nature as its claim. This suggests that the court's due process analysis should concentrate on specific jurisdiction because consideration of whether the defendant's contacts with the state relate to the plaintiff's cause of action is a factor normally relevant only to specific jurisdiction. See, e.g., uBid, 623 F.3d at 425.

"Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." Tamburo v. Dworkin, 601 F.3d 693, 702 (7th Cir. 2010) (citing Burger King, 471 U.S. at 472). "[T]he nature of the purposeful-direction/purposeful-availment inquiry depends in large part on the type of claim at issue. For example, personal jurisdiction in a breach-of-contract suit generally turns on whether the defendant purposefully availed himself of the privilege of conducting business in the forum state." Felland v. Clifton, 682 F.3d 665, 674 (7th Cir. 2012). "Where a plaintiff's claim is for an intentional tort, 'the inquiry focuses on whether the conduct

10

underlying the claim was purposely directed at the forum state.'" Id. (quoting Tamburo, 601 F.3d at 702). The plaintiff's complaint alleges breach of contract (third claim for relief) but also two claims based in tort for theft and conversion. (Docket No. 1.)

The defendant argues that the court must proceed only with a purposeful-direction inquiry because, notwithstanding the plaintiff's breach of contract claim, this case ultimately lies in tort. (Docket No. 34 at 9.) Thus, the defendant focuses its argument upon the question of purposeful-direction. The plaintiff, however, raises only the purposeful-availment theory. (Docket No. 18 at 14-16.)

In Felland v. Clifton, 682 F.3d 665, 674 (7th Cir. 2012), discussed by the defendant, the court of appeals did not hold that the court must choose between alternative claims and apply only the purposeful-direction or purposeful-availment inquiry to the entire complaint. To the contrary, the court stated the nature of the claim will direct which inquiry is purposed. Then the court, albeit in cursory fashion, mentioned the purposeful-availment inquiry regarding the plaintiff's breach of contract claim. Id. The court then focused on the purposeful-direction inquiry in regard to the tort claim.

Here, the plaintiff alleges both contract and tort causes of action. The tort causes of action are the basis for jurisdiction under Wis. Stat. § 801.05(4)(a). For the assertion of jurisdiction under Wis. Stat. § 801.05(4)(a) to comport with due process, the plaintiff must show that ServerCentral's tortious conduct was purposefully directed towards Wisconsin. Specifically, it must establish: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." Felland, 682 F.3d at 674-75 (quoting Tamburo, 601 F.3d at 703).

11

Vesuvius has failed to establish these elements (or even address the purposeful direction theory at all) and thus the court must conclude that exercising jurisdiction under Wis. Stat. § 801.05(4)(a) would offend due process. Thus, the court turns to the question of whether jurisdiction under Wis. Stat. § 801.05(1)(d) would comport with due process because the defendant purposefully availed itself of the privilege of conducting business in Wisconsin.

The court begins with the plaintiff's contention that the defendant purposefully availed itself of the privilege of conducting business in Wisconsin. (Docket No. 18 at 15-16.) The plaintiff notes that the defendant had multiple customers in Wisconsin and entered into a long-term contract where it agreed to provide ongoing services to a Wisconsin-based business. (Docket No. 18 at 15-16.) However, "in a breach of contract case, it is only the 'dealings between the parties in regard to the disputed contract' that are relevant to minimum contacts analysis." RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1278 (7th Cir. 1997) (quoting Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co., 75 F.3d 147, 153 (3d Cir. 1996)).

Cases addressing the question of how internet contacts impact personal jurisdiction frequently involve situations where an internet retailer sells and ships a product into the prospective forum state. See, e.g., Hemi Grp., 622 F.3d at 755. Here, Vesuvius, the Wisconsin-based plaintiff, used the internet to purchase a service rather than a physical product from the Illinois-based business. Thus, there is no evidence that the defendant ever shipped anything physical (aside from perhaps an invoice) into Wisconsin. While an internet retailer that ships a product is forced to discern the location of its customer and thus is given a more explicit opportunity to decide whether to do business with the customer, a business that provides a service via the internet might have little reason to know the physical location of its customer. This distinction is significant in the due process context because "[d]ue process requires that 'potential defendants should have some control

over—and certainly should not be surprised by—the jurisdictional consequences of their actions.'" Hemi Grp., 622 F.3d at 758 (quoting RAR, Inc., 107 F.3d at 1278).

Although a business providing a service via the internet might, under certain circumstances, find itself surprised by the jurisdictional consequences of its actions such that an exercise of personal jurisdiction would offend due process, cf. Hy Cite Corp. v. Badbusinessbureau.com, L.L.C., 297 F. Supp. 2d 1154, 1163 (W.D. Wis. 2004), this is not necessarily so, see, e.g., uBID, 623 F.3d at 427 (holding that exercise of specific personal jurisdiction over defendant web-hosting business comported with due process because of defendant's extensive advertising and customers in forum state). The relationship between the parties here was lengthy and substantial. ServerCentral cultivated and nurtured its relationship with Vesuvius, knowing Vesuvius was based in Wisconsin. In this regard, ServerCentral purposely availed itself of the Wisconsin market through its continuous and deliberate actions. See uBID, 623 F.3d at 429.

Moreover, the court finds it noteworthy that while the parties chose to include not only a choice of law but also a forum selection clause within their contract. (Docket No. 1-2 at 6, ¶13.1.) The agreement states that it shall be interpreted and construed in accordance with Illinois law, but the forum provision states only that any action shall be brought in a United States District Court, if possible. (Docket No. 1-2 at 6, ¶13.1.) If ServerCentral sought to avoid suit in any district other than United States District Court for the Northern District of Illinois, it could have negotiated to include this provision in the parties' agreement. The absence of such a provision, when considered in light of the fact that ServerCentral clearly contemplated venue when negotiating the agreement, strongly suggests that ServerCentral anticipated the prospect of facing suit in the home district of its customer. Thus, the court concludes that the defendant had constitutionally sufficient minimum contacts with Wisconsin.

13

"Mere minimum contacts, however, are not sufficient to establish specific personal jurisdiction. As the Supreme Court has emphasized, it is essential not only that the defendant have minimum contacts with the forum state but also that the plaintiff's claim against the defendant 'arise out of or relate to' those contacts." uBID, 623 F.3d at 429 (quoting Burger King, 471 U.S. at 472–73).

ServerCentral's relevant contacts with Wisconsin all relate efforts to perform its contract with Vesuvius to provide colocation services. That contract, and thus those contacts, lie at the heart of this case, and therefore the court concludes that the plaintiff's claim arises out of the defendant's contacts with Wisconsin. Thus, the court turns the final consideration of whether exercising jurisdiction over ServerCentral "would offend traditional notions of fair play and substantial justice." Felland, 682 F.3d at 677.

In determining whether exercising jurisdiction over a defendant would offend traditional notions of fair play and substantial justice, the court considers "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Id. (quoting Burger King, 471 U.S. at 477).

The court finds no unfairness or injustice in forcing ServerCentral to defend this case in Wisconsin. The burden imposed on the defendant to defend this case in Wisconsin is minimal. Some burden will be inherent any time there is an out of state defendant. Felland, 682 F.3d at 677; see also Logan Prods., 103 F.3d at 54. But this is not a case where a defendant is being asked to litigate a case in a distant forum but rather in an adjoining judicial district, roughly 100 miles away from its offices. And "as is almost always the case, Wisconsin has a strong interest in providing a forum for its residents to seek redress for torts inflicted by out-of-state actors and injuries suffered

within the state." Felland, 682 F.3d at 677. The only factor that arguably weighs slightly in favor of this matter being litigated in the Northern District of Illinois is the fact that, pursuant to the contract, Illinois law governs any contract dispute. (Docket No. 1-2 at 6, ¶13.1.) While a federal court in Illinois will possess a greater familiarity with Illinois law, applying foreign law is a routine task for any federal court. And in any event, this factor impacts largely the convenience of the court and thus insufficient to constitute a substantial injustice or unfairness to the defendant.

### D. Transfer under 28 U.S.C. § 1404

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

> Section 1404 (a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice. Thus, as the Court recognized in Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26, 27, [(1960)], the purpose of the section is to prevent the waste "of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . ." To this end it empowers a district court to transfer "any civil action" to another district court if the transfer is warranted by the convenience of parties and witnesses and promotes the interest of justice.

Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (footnotes omitted). There is no dispute that this action could have been filed in the Northern District of Illinois. Thus, the court's analysis is limited to consideration of the convenience of the parties and witnesses and the interest of justice. The movant "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219-220 (7th Cir. 1986).

"With respect to the convenience evaluation, courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum. Other related factors include the location of material events and the relative ease of access to

sources of proof." Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc., 626 F.3d 973, 978 (7th Cir. 2010) (citations omitted). "The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." Id.

> For this element, courts look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy. The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result.

Id. (citations omitted).

ServerCentral emphasizes that all of its witnesses and documents are located in the Northern District of Illinois. (Docket No. 14 at 11.) Moreover, it notes that the only foreseeable third-party witnesses, the police officers who responded when Vesuvius was blocked from recovering its equipment, are in the Northern District of Illinois. (Docket No. 14 at 10-11.) It also contends that transfer to the Northern District of Illinois would serve the interest of justice because that court would be more familiar with the law that shall govern the contract and will, according to statistics, be able to resolve the case quicker.

The court concludes that the defendant has failed to sustain its burden to show that the Northern District of Illinois is clearly more convenient. Whenever opposing parties are based in different districts, one party will necessarily be inconvenienced. "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." Research Automation, 626 F.3d at 978.

The inconvenience that the defendant may suffer by being forced to litigate this case in Wisconsin will be minimal. Again, this is not a matter of cross-country litigation. This is a matter of roughly 100 miles, a distance implicitly recognized as reasonable under the Federal Rules of Civil Procedure in that this is the reach of the court's subpoena power outside of the district, Fed. R. Civ.

16

P. 45(b)(2)(B). Litigants and attorneys within this district routinely travel farther; after all, Milwaukee is closer to Chicago than it is to Green Bay.

As for the fact that the Northern District of Illinois is more likely to be familiar with Illinois law, the court finds this factor insignificant. As noted above, federal courts routinely apply federal law and contract law in a case such as this is not likely to be especially arcane or novel such that the interest of justice will be furthered by presenting this matter to a court in Illinois.

The defendant contends that the Northern District of Illinois will be able to dispose of this case more efficiently and notes publicly available statistics indicating that the median time for a case to proceed from filing to disposition is 37.1 months in the Eastern District of Wisconsin whereas it is 24.8 months in the Northern District of Illinois. (Docket No. 14 at 11-12.) But raw statistics such as these are rarely a good measure of what a party is likely to experience in a particular case; any number of circumstances can skew the picture created through statistics. The court can speak only to its own case processing and note that it is generally the parties that dictate the speed at which a case is resolved. Once parties before this court are prepared for trial, this court, unencumbered by the press of criminal trials, can ordinarily schedule a trial promptly and the parties can be assured that a trial, once scheduled, receives priority for such dates on the court's calendar. Moreover, the statistics relied upon by the defendant were for the year ending March 31, 2011. During the period that the parties undertook discovery related to the motion, the Administrative Office released updated statistics for the year ending March 31, 2012 that indicate that the gap between this district and its neighbor to the south regarding the median time between filing and resolution at trial has narrowed substantially, with this district averaging 30.9 months and the Northern District of Illinois averaging 28.9 months. <u>Compare</u> Table C-5, U.S. District Courts— Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending March 31, 2011, available at

17

http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2011/tables/C05Mar11.pdf, with Table C-5, U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending March 31, 2012, available at http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2012/tables/C05Mar12.pdf.

### III. CONCLUSION

Based upon the foregoing analysis, the court concludes that the defendant falls within Wisconsin's long-arm statute, and the court may, consistent with due process, exercise personal jurisdiction over the defendant. In addition to its tort claims, the plaintiff alleges that the defendant breached the contract. Thus, the court looks to whether the defendant purposefully availed itself of the privilege of doing business in Wisconsin and concludes that it did so by cultivating and nurturing a long-term relationship with its Wisconsin customer, Vesuvius. The plaintiff's claims arose out of the defendant's relevant contacts with Wisconsin, specifically its relationship and contract with the plaintiff. Subjecting the defendant to suit in this district, a district that adjoins the defendant's home district and has its main courthouse roughly 100 miles from the defendant's offices, would not offend traditional notions of fair play and substantial justice. Finally, the defendant has failed in its burden to show that transfer to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a) is appropriate. The roughly 100 miles between the defendant's main offices and this court are comparatively minimal and transferring the case to the Northern District of Illinois would simply shift the inconvenience of travel from the defendant to the plaintiff. Accordingly, the defendant's motion to dismiss or in the alternative to transfer shall be denied.

**IT IS THEREFORE ORDERED** that the defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(3) or in the alternative to transfer pursuant to 28 U.S.C. § 1404(a), (Docket No. 13), is **denied**.

**IT IS FURTHER ORDERED** that the court shall conduct a telephonic scheduling conference on **May 22, 2013** at **8:30 AM**. The court shall initiate the call.

Dated at Milwaukee, Wisconsin this 3rd day of May, 2013.

/s/ Aaron E. Goodstein
AARON E. GOODSTEIN
U.S. Magistrate Judge

19
Case 2:12-cv-01161-AEG   Filed 05/03/13   Page 19 of 19   Document 35